Argued and submitted December 14, 2011, affirmed July 18, 2012, *rev den*, 353 Or 209 (2013)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## KEVIN MICHAEL O'HARA,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0901452; A146327

283 P3d 396

Bronson D. James argued the cause for appellant. With him on the opening and reply briefs was JDL Attorneys LLP. Kevin Michael O'Hara filed the supplemental brief *pro se.*

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Presiding Judge, and Haselton, Chief Judge.*

BREWER, P. J.

---

* Haselton, C. J., *vice* Gillette, S. J.

**BREWER, P. J.**

Defendant appeals a judgment of conviction for first-degree rape, ORS 163.375, and first-degree sexual abuse, ORS 163.427. Defendant assigns error to the trial court's denial of his motion for a judgment of acquittal on both charges on the ground that the state did not present sufficient evidence of forcible compulsion, a common element of both offenses. Defendant also makes two other assignments of error, which we reject without extended discussion. We affirm.

We review the trial court's denial of a motion for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the state proved all of the essential elements of the crime beyond a reasonable doubt. *State v. Lockamy*, 227 Or App 108, 113, 204 P3d 822 (2009). Defendant was a close friend of the victim's parents. The victim had known defendant since she was a young child, and she referred to him as "Uncle Kevin." In June 2002, when the victim was 14 years old, her parents took a long weekend trip and asked defendant to babysit the victim and her two younger brothers. Defendant stayed in one of the boys' bedrooms, which connected with the victim's bedroom through a shared bathroom.

On that Saturday evening, after the victim's brothers had gone to bed, the victim and defendant watched television, and defendant asked the victim if she had ever had sex. He told the victim several times that she was beautiful, sexy, and very pretty. Defendant told the victim about having sex with his girlfriend and how she liked it. When a commercial for a phone sex line appeared on the television, defendant told the victim that he often called such numbers and pressed the victim to call the number. She refused and went upstairs to go to bed.

Defendant later called the victim on her personal phone line to ask where the towels were in the shared bathroom. She told him where they were, but defendant asked her to bring him one. When she went into his room and set the towel on the bed, defendant grabbed her hand.

Defendant told her she was pretty, beautiful, and sexy, put his hand on her stomach, and kissed her. Defendant continued to tell the victim that she was beautiful and sexy, kissed her and rubbed her stomach, and then moved his hand up to her breast. He then lifted up one of the victim's arms, while she lifted the other, in order to remove her shirt. The victim testified that she lifted her arm up because she was scared and did not know what to do. She was crying.

Defendant touched her chest, kissed her neck and chest, and then pushed her onto the bed. She testified that,

"[h]e didn't shove me. I didn't think he was going to kill me, but he's over 200 pounds. I was closer to 100 or something. I mean, he had enough force and body weight to push me down."

Defendant then pulled her shorts and underwear down, pulled his own shorts off, and had sexual intercourse with the victim. Defendant held the victim's wrists and forearms above her head, against the bed. He also touched her breast again. The victim was "crying and crying" and told defendant that she did not want to be there and that she "[did not] want this." The victim disclosed the incident to her parents several years later.

The state charged defendant with one count of first-degree rape and two counts of first-degree sexual abuse. The state ultimately dismissed one of the first-degree sexual abuse counts. At the conclusion of the state's case-in-chief, defendant moved for a judgment of acquittal on the two remaining counts, arguing, among other things, that there was insufficient evidence to establish the element of forcible compulsion for each of the charged crimes. The trial court denied that motion. The jury found defendant guilty of both offenses. Defendant appeals from the ensuing judgment of conviction.

On appeal, defendant renews his challenge to the trial court's denial of his motion for judgment of acquittal. Defendant argues that, particularly in light of the Supreme Court's recent decision in *State v. Marshall*, 350 Or 208, 253 P3d 1017 (2011), the trial court erred in denying his motion.

ORS 163.375(1)(a) defines the crime of first-degree rape as follows:

"(1)   A person who has sexual intercourse with another person commits the crime of rape in the first degree if:

"(a)   The victim is subjected to forcible compulsion by the person[.]"

ORS 163.427 defines the crime of first-degree sexual abuse as follows:

"(1)   A person commits the crime of sexual abuse in the first degree when that person:

"(a)   Subjects another person to sexual contact and:

"(A)   The victim is less than 14 years of age;

"(B)   The victim is subjected to forcible compulsion by the actor; or

"(C)   The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless; or

"(b)   Intentionally causes a person under 18 years of age to touch or contact the mouth, anus or sex organs of an animal for the purpose of arousing or gratifying the sexual desire of a person."

As noted, defendant contends that the trial court erred in denying his motion for a judgment of acquittal with respect to both charged offenses because the state failed to present legally sufficient evidence of forcible compulsion. Accordingly, the issue presented is whether, from the evidence adduced at trial, a rational trier of fact could find that the victim submitted to the sexual conduct at issue as a result of forcible compulsion.

The term "forcible compulsion," as it applies to both charged offenses, is defined by ORS 163.305(2):

" 'Forcible compulsion' means to compel by:

"(a)   Physical force; or

"(b)   A threat, express or implied, that places a person in fear of immediate or future death or physical injury to

self or another person, or in fear that the person or another person will immediately or in the future be kidnapped."

Under that definition, forcible compulsion may be accomplished by either physical force or an express or implied threat. In this case, the state relied on a "physical force" theory. In support of their competing arguments about the sufficiency of the evidence, both parties primarily rely on the Supreme Court's decision in *Marshall*. Accordingly, we begin our analysis with that case.

In *Marshall*, the court examined the physical force aspect of forcible compulsion in the context of a first-degree sexual abuse case. The court addressed the issues of whether the forcible compulsion element of a sexual offense "must in some sense cause or result in the sexual contact" and "whether the term 'forcible compulsion' contemplates a particular level of physical force." 350 Or at 216. As to the first issue, the court explained that there is a "causal relationship between the actor's use of physical force and the victim's submission to, or engagement in, the sexual contact." *Id.* at 218. Furthermore,

"a single act of forcible compulsion that accompanies multiple acts of sexual contact does not necessarily transform each of those sexual contacts into separate instances of first-degree sexual abuse. Instead, for each of the sexual contacts that the state charges, the state must rely on an act of 'forcible compulsion' that bears some causal relationship to the sexual contact: It must, in some sense, result in that *particular* sexual contact."

*Id.* at 219 (emphasis in original).

With respect to the level of physical force required by the statute, the state

"must show that the physical force that the defendant used was greater in degree or different in kind from the simple movement and contact that is inherent in the [sexual contact at issue] and that the force was sufficient to compel the victim to submit to or engage in the sexual contact, against the victim's will."

*Id.* at 227. Furthermore,

"The physical force must be sufficient to 'compel' the victim, against the victim's will, to submit to or engage in the sexual contact, but it need not rise to the level of violence. The question ordinarily will be one of degree.

"* * * * *

"Moreover, the degree or kind of physical force that will be sufficient may depend on the type of sexual contact that the state alleges. As noted, ORS 163.305(6) encompasses both sexual contact that occurs when a person 'touch[es] * * * the sexual or other intimate parts of [another]' and sexual contact that occurs when a person 'caus[es]' another' to touch the sexual or other intimate parts of the actor.' When a defendant subjects a victim to the first type of sexual contact—defendant touching victim—the defendant's own physical act may range from no, or minimal, 'physical force,' such as occurs in a momentary contact or brushing against the victim, to a violent groping or injurious sexual assault that clearly constitutes forcible compulsion. A defendant's conduct can only constitute first-degree sexual abuse when the defendant uses physical force that is greater in degree or different in kind from the simple movement and contact inherent in the act of touching.

"* * * * *

"Finally, the force that is sufficient to 'compel' one person to submit to or engage in a sexual contact against his or her will may be different from that which is sufficient to compel another person to do so. In determining whether the physical force used by the defendant against the particular victim was sufficient to compel that victim to submit to or engage in the sexual contact, the trier of fact may consider circumstances known to the defendant that relate to whether the victim was in fact 'compelled,' such as the victim's age; the differences in age, size, and strength between the victim and the defendant; the relationship between the victim and the defendant; and similar facts."

*Id.* at 225-26.

Based on those principles, the court reversed one of the defendant's two convictions for first-degree sexual abuse, in which the defendant had slipped his hand down the back of the victim's sweatpants and placed it on her buttocks. *Id.* at 213. The court held that the force that

the defendant used to touch the victim's buttocks was no greater or different than what is inherent in the act. *Id.* at 228. However, the court upheld the defendant's other conviction, concluding that a reasonable jury could find that the defendant used physical force when he used "his own hands to cause the victim * * * to touch his intimate parts." *Id.* at 227. That force was sufficient to compel the victim to submit to the sexual contact against her will. *Id.* at 228.

Central to the court's conclusion were the circumstances in which the contact occurred. The victim was a 14-year-old girl, and the defendant, a 27-year-old man, was a friend of the victim's mother who had been living in the victim's home for a short time. The crime took place in the victim's room, where she had been sleeping in her bed when she awoke to find defendant lying partially on top of her. The physical setting, the victim's age, the age difference between the victim and defendant, and the fact that the victim's mother had welcomed defendant into her home, all contributed to a situation in which the court concluded that a jury reasonably could find that the physical force that the defendant exerted was sufficient to cause a person of that age and in those circumstances to submit to the physical contact against her will. *Id.* at 228.

With that background in mind, we turn to the circumstances of this case. We begin with the first-degree rape charge. Defendant notes that, here, there "simply is no evidence of a struggle, or anything resembling the physical force used in *Marshall*." Rather, defendant asserts, the physical force "was the sexual contact." As defendant sees things, his placement of the victim's hands was "not inconsistent with non-violent sex." He notes that there "was no evidence of bruising, bleeding, or other signs of force." In short, defendant views the evidence as showing no more than the "natural force" and "mere positioning" of bodies that is associated with sexual intercourse. We disagree.

The totality of circumstances in this case demonstrates that the evidence of forcible compulsion was sufficient for a jury determination of the first-degree rape charge. In the first place, the nature of defendant's conduct must be viewed in context. He was a man in his forties; the

victim was a 14-year-old child. He weighed about twice as much as she did. Importantly, he occupied a position of trust in the victim's family. Although not a biological relative of the victim, she regarded him as an "uncle." He was trusted to the point that the victim's parents left him in charge of their three children while they took a vacation. Finally, the crime occurred inside the family home, in the victim's brother's bedroom. In short, this was not a stranger rape but, rather, an example of one of the most confusing and blatant sorts of violation of trust that a child can experience.

Second, defendant's characterization of the degree of physical force that he used shades the evidence in his direction, which is inconsistent with our standard of review. Here, viewed in the light most favorable to the state, the evidence showed that defendant exerted more physical force than that involved, as defendant characterizes it, in the "natural force exerted when one person lays * * * on another during intercourse." As the victim testified, defendant lifted up one of her arms in order to take off her shirt, pushed her down onto the bed, and used his hands to hold her wrists and forearms above her head while, in the victim's words, he "raped" her. Throughout the criminal episode, the victim was crying and telling defendant to stop. Under such circumstances, the fact that the victim lifted her other arm and did not physically struggle with defendant is relevant—but hardly conclusive—evidence with respect to the element of forcible compulsion. It follows that the trial court did not err in denying defendant's motion for a judgment of acquittal on the first-degree rape charge.

The analysis is more complicated regarding the first-degree sexual abuse charge. With respect to that charge, the indictment alleged:

> "The defendant, on or about June 15, 2002, in Clackamas County Oregon, did unlawfully and knowingly, by means of forcible compulsion, subject [the victim] to sexual contact by touching her breast, a sexual or intimate part of [the victim]."

In support of that charge, the state adduced evidence of two instances in which defendant touched the victim's breast.

According to the victim, the first instance occurred near the beginning of the sexual assault:

> "[THE VICTIM]:   Kevin said, 'Thank you,' and he grabbed my hand, and he said, 'You know you're so pretty. You're so beautiful. You're sexy. And he put his hand on my stomach and he just kept telling me how pretty and beautiful I was and then he kissed me.
>
> "* * * * *
>
> "[THE VICTIM]:   He kissed my cheek and kept rubbing my stomach and whispering how sexy I was and beautiful. And then he kissed my lip and moved his hand up further to my chest * * *.
>
> "* * * * *
>
> "He goes to the floor and he continued to touch my chest, kiss my neck, and then kiss my chest * * *."

Defendant argues that the foregoing evidence was insufficient to establish forcible compulsion. We agree. Much like the evidence with respect to the sexual abuse charge that the court in *Marshall* held was insufficient to establish forcible compulsion, the evidence relating to defendant's touching and kissing the victim's breast in the foregoing instance does not demonstrate that defendant restrained the victim, held her, prevented her from turning away from his touch, or in any manner used "force" to accomplish or facilitate the sexual contact. As in *Marshall*, "nothing in the record suggests that the [touching] itself involved any greater or different force than was inherent in that particular sexual contact." 350 Or at 228.

The state does not vigorously challenge defendant's characterization of the foregoing instance of sexual contact. Rather, the state notes that the evidence showed that defendant touched the victim's breast again later in the sexual assault, while he was raping her. The state argues that, because defendant was holding the victim's arms and raping her at the time of that act of touching, the evidence was sufficient for the jury to find that defendant forcibly compelled it. Defendant, whose primary focus is on the first instance of sexual contact, has largely ignored the later act.

We note preliminarily that defendant did not ask the trial court to require the state to elect among the multiple acts in which the evidence showed that defendant touched the victim's breast. Thus, if the evidence was sufficient to show that the second act was forcibly compelled, that act would suffice to support a conviction on the first-degree sexual abuse charge.[1] For the reasons explained in our analysis of the rape charge, we conclude that, viewed in the light most favorable to the state, the evidence was sufficient for the jury to find that defendant forcibly compelled the touching of the victim's breast while he was raping her.[2] It follows that the trial court did not err in denying defendant's motion for a judgment of acquittal with respect to the first-degree sexual abuse charge.

In the same assignment of error, defendant also argues that the evidence was insufficient to establish that he knew that his actions amounted to forcible compulsion. *See State v. Nelson*, 241 Or App 681, 251 P3d 240 (2011), *rev allowed*, 351 Or 678 (2012) (holding that a culpable mental state applies to the element of forcible compulsion in prosecution for first-degree rape and first-degree sexual abuse). We reject that argument without discussion. In a supplemental assignment of error, defendant asserts that the trial court plainly erred, in light of this court's decision in *Nelson*, in failing *sua sponte* to instruct the jury that the state was required to prove that he knowingly subjected the victim to forcible compulsion. In this case, the trial court instructed the jury that, to convict defendant of either charge, it must find that he knowingly engaged in the requisite physical acts, but it did not instruct the jury

[1] This is a case, such as the court contemplated in *Marshall*, where "a single act of forcible compulsion [accompanied] multiple acts of sexual contact[.]" *Marshall*, 350 Or at 219. Accordingly, "for each crime, the state must rely on an act of 'forcible compulsion' that bears some causal relationship to the sexual contact: It must, in some sense, result in that *particular* sexual contact." *Id.* (Emphasis in original.) Defendant has not asserted on appeal that, if he forcibly subjected the victim to sexual intercourse or sexual contact, such forcible compulsion did not bear some causal relationship to that particular sexual act.

[2] Defendant does not assert that his act of touching the victim's breast during the course of the rape necessarily merged with the rape. *See State v. Spring*, 172 Or App 508, 513-14, 21 P3d 657, *rev den*, 332 Or 559 (2001) (holding that offenses of rape and first-degree sexual abuse have different elements and therefore do not merge under ORS 161.067).

that a culpable mental state requirement applied to the forcible compulsion element. Because defendant's argument on appeal necessarily challenges the propriety of the instructions regarding forcible compulsion and the culpable mental state requirements for both charged offenses that the trial court actually gave, it is not reviewable. *See* ORCP 59 H(1); *State v. Alonzo*, 249 Or App 149, 151, 274 P3d 889 (2012).

Affirmed.